# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| EASTLYN IGWEMADU, ) | |
| Plaintiff, ) | |
| ) | Case No. 3:19-cv-0031 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

ATTORNEYS:

**Vincent A. Colianni, II**
**Marina Leonard**
Colianni & Colianni
St. Croix, U.S.V.I.
   *For Plaintiff Eastlyn Igwemadu,*

**Delia L. Smith, United States Attorney**
**Joycelyn Hewlett, AUSA**
**Kimberly L. Cole, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
   *For Defendant United States of America.*

## MEMORANDUM OF DECISION

**Molloy, Chief Judge**

**THIS MATTER** came before the Court for a Bench Trial on February 8, 2021, via Microsoft Teams. Plaintiff filed her Proposed Findings of Fact on March 19, 2021. (ECF No. 102.) The United States of America (the "Government") filed its Proposed Findings of Fact on April 1, 2021. (ECF No. 103.) Plaintiff filed a reply thereto on April 8, 2021. (ECF No. 104.) Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court issues the following findings of facts and conclusions of law.

## I. PROCEDURAL BACKGROUND

On May 3, 2019, Plaintiff Eastlyn Igwemadu ("Igwemadu") filed her complaint in this matter against the Government, alleging a single count of negligence for an injury that occurred April 13, 2018. (ECF No. 1.) On July 16, 2019, the Government answered

Igwemadu's complaint, raising failure to state a claim upon which relief can be granted, limitation of recovery to the amount set forth in Igwemadu's administrative claim, lack of duty to warn, assumption of risk, comparative negligence, contributory negligence, failure to mitigate damages, lack of breach of duty, and lack of notice as affirmative defenses. *See* ECF No. 6.

Igwemadu alleges her claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), therefore the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and has personal jurisdiction over the parties. Venue is proper in the Division of St. Thomas and St. John because the cause of action accrued in St. Thomas.

Igwemadu's jury demand was struck because she was not entitled to a trial by jury for an action arising under the FTCA, pursuant to 28 U.S.C. § 2402. Prior to the bench trial, the parties jointly filed a proposed second amended final pretrial order on December 21, 2020, attached as Exhibit 1 to the parties' joint motion to approve the same. *See* ECF No. 80. The Court approved and entered the second amended final pretrial order on December 28, 2020. *See* ECF No. 81. The sole issue to be tried was Igwemadu's claim of negligence.

This matter came before the Court for a bench trial on February 8, 2021, via Microsoft Teams. Igwemadu appeared personally at trial and through counsel, Attorneys Vincent A. Colianni, II and Marina Leonard. The United States appeared though counsel, Attorneys Joycelyn Hewlett and Kimberly L. Cole. Five witnesses testified: Sen. Celestino White ("White"), Roy Sheridan ("Sheridan"), Pedro Rosario ("Rosario"), Dr. Jeffrey Chase ("Chase"), and Igwemadu. Eight exhibits were admitted into evidence: seven of which were offered by Igwemadu[1] and one by the United States.[2]

## II. FINDINGS OF FACT

1. At the time of the incident in question, Igwemadu was a retired 81-year-old woman living in St. Thomas, U.S. Virgin Islands. Trial Transcript (hereinafter, "Tr.") at 101, 103-04, 161.

---

[1] Exhibit 1: Photograph of cone; Exhibit 2: Photograph of sidewalk with cone; Exhibit 5: Photograph of sidewalk; Exhibit 6: Photograph of repaired sidewalk; Exhibit 13: Itemized charges from Virgin Islands Orthopedics; Exhibit 14: Invoices from Synergy and Fitness; Exhibit 16: Photograph of Sugar Estate Post Office.

[2] Exhibit E: USPS Facilities Management System maintenance log.

*Igwemadu v. United States*
Case No. 3:19-cv-0031
Memorandum of Decision
Page 3 of 10

    2.      On April 13, 2018, between 9:00 and 10:00 A.M., Igwemadu visited the Sugar Estate Post Office, located in Estate Thomas, St. Thomas, V.I. Tr. at 31, 49, 57, 104.

    3.      Igwemadu entered the post office through the main entrance and exited through a side door leading out of the post office box area. Tr. at 51, 75-76, 105, Ex. 2.

    4.      Upon exiting the post office, Igwemadu fell on the uncovered sidewalk. Tr. at 53-54, 106.

    5.      The joint where the two sidewalks intersected – the covered concrete patio immediately adjacent to the post office door and the uncovered walkway leading away from the door – was not flush. The outer uncovered walkway was raised roughly two to three inches above the inner concrete patio. Tr. at 58-61, Ex. 1.

    6.      The only testimony regarding where Igwemadu fell was her own and White's. Igwemadu's fall was witnessed by White. Tr. at 51-53. White did not witness Igwemadu fall at the point where the two sidewalks met. *Id.* Rather, White testified that Igwemadu had stepped from the concrete patio connecting to the post office side entrance onto the uncovered sidewalk leading past the JoJo tree and was walking on the uncovered sidewalk when she fell. *Id*.

    7.      While White was being shown Exhibit 2, he testified repeatedly that Igwemadu fell "further down the sidewalk" than where the cone in Exhibit 2 was placed. Tr. at 53 (Q: "So was it, was it where the cone is in that photo or further down the sidewalk?" A: "Further down the sidewalk."); Tr. at 50-51 (Q: "Okay. And where in that picture did you see her trip or have a misstep? Where were her feet? Where were her feet?" A: "We're looking at the two pillars, upright, vertical pillars, she had stepped off – between those two pillars, she had stepped onto that lower sidewalk. She was on that lower sidewalk adjacent to the Jojo plum tree." Q: "She was already on the sidewalk?" A: "She was already on the sidewalk."); Tr. at 51-52 (Q: "Mr. White, do you see anything on that screen that you can pinpoint exactly where her feet were before she fell?" A: "No. No." Q: "So based on that exhibit, you can't show me where her feet were before – " A: "Your Honor, all I can see is where the barricades is located, the two pillars. She walked down, she walked onto that, onto that covered section and stepped onto the other sidewalk.").

8. Igwemadu, conversely, testified that she tripped "on a broken sidewalk," immediately where the cone in Exhibit 2 is located. Tr. at 106-07.

9. The Court will credit the testimony of Mr. White and specifically find that Igwemadu tripped and fell further onto the uncovered sidewalk, roughly a few steps after passing the uneven sidewalk intersection.

10. After falling, Igwemadu was assisted by White and Sheridan. Tr. at 58. Sheridan did not see Igwemadu fall but came to help after she had fallen, and found Igwemadu laying in the center of the walkway next to the JoJo tree. Tr. at 64-65.

11. When Igwemadu fell, she fell forward, attempted to break her fall with her left hand, and hit her head on the concrete walkway. Tr. at 107-08.

12. After falling, Igwemadu walked inside, reported the incident to a post office employee, then drove herself to the hospital between 12:00 and 1:00 P.M. Tr. at 109-12.

13. Upon arrival to the hospital, Igwemadu was treated for a fracture to her fifth metacarpal in her non-dominant left hand – the bone in her hand that aligns with her pinky finger. Tr. at 110-11, 153-54.

14. Igwemadu's left hand was placed in a cast, she was advised to take Tylenol, and she was discharged with an appointment for the following day to visit Dr. Flowers, an orthopedist. Tr. at 110-115.

15. Igwemadu testified to experiencing significant pain and weakness when she left the hospital. Tr. at 112-13. On April 14, 2018, Igwemadu visited Dr. Flowers, who removed Igwemadu's cast, x-rayed her hand, confirmed that her hand was broken, and re-casted her hand. Tr. at 113-14. After several follow-up visits with Dr. Flowers, Igwemadu's cast was removed in July 2018, at which time Dr. Flowers referred her to physical therapy. Tr. at 118.

16. Igwemadu attended physical therapy from July 2018 to September 2018. Tr. at 119. Over this three-month period, Igwemadu was recommended to attend physical therapy three times per week for twelve weeks, totaling thirty-six total sessions. Tr. at 135. Despite this, Igwemadu only attended eight sessions in this time. Tr. at 135.

17. While Igwemadu testified that she did not attend all of her recommended sessions because she left the territory and was in Orlando, she did not testify to seeking an alternate physical therapist in Florida. Tr. at 135.

18. In fact, following her September 2018 physical therapy appointment, Igwemadu sought no further medical treatment for her injury until August 21, 2019, at which time she was referred to Dr. Jeffrey Chase at VI Orthopedics. Tr. at 124.

19. Upon visiting Chase, Igwemadu was again referred to physical therapy. Tr. at 125.

20. Igwemadu attended physical therapy with VI Orthopedics from August 21, 2019, until January 27, 2020. Tr. 124-26, 155.

21. While there is no testimony regarding the number of recommended sessions for this round of physical therapy, Igwemadu attended between six and eight sessions with VI Orthopedics. Tr. at 160.

22. Igwemadu testified to experiencing "a little" improvement resulting from these physical therapy sessions. Tr. at 125-26.

23. Importantly, by this point in her treatment, Igwemadu's primary source of her pain was in her forearm, slightly below her wrist. Tr. at 156.

24. An MRI indicated that Igwemadu was suffering from a degeneration of cartilage in her wrist as well as arthritis in her thumb. Tr. at 167, 174.

25. Chase testified that the degeneration, arthritis, and trauma from Igwemadu's fall all likely contribute to the pain and weakness in her left hand. Tr. at 171-72.

26. The degeneration and arthritis, however, could be caused by Igwemadu's age. Tr. at 174, 189, Or, alternately, the trauma of Igwemadu's fall could have caused her arthritis and degeneration to become symptomatic and cause pain where there had not been any previously. Tr. at 190.

27. The cause aside, Chase testified that Igwemadu's grip strength in her left hand is significantly weaker than that in her right hand – Igwemadu was only able to lift 5 pounds with her left hand compared to 50 pounds in her right hand. Tr. at 163-64.

28. There is not sufficient evidence on the record to conclude that Igwemadu's lasting pain and weakness was caused by her fall at the post office.

29. The post office had procedures in place to monitor the building for maintenance issues. Rosario, who at the time of Igwemadu's fall was a labor custodian for the postal service, and other postal employees would check the premises regularly for defects and report anything they may find to the supervisor. Tr. at 95.

30. These reported defects would then be compiled on a maintenance log. Tr. at 97-98, Ex. E.

31. In 2017, Rosario had previously repaired the area where the covered and uncovered sidewalks joined, near where Igwemadu tripped, and no additional entries regarding that section of sidewalk appeared in the maintenance log until Igwemadu's fall. Tr. at 94-95, Ex. E.

32. Based on Rosario's testimony these inspections and subsequent entries are largely crowdsourced, and Sheridan's testimony raises issues as to how diligently maintenance issues were recorded. Sheridan had observed numerous other post office patrons trip in the same area where Igwemadu fell, and alerted USPS of the dangerous condition a couple of months prior. Tr. at 60.

33. Despite this, no entry was made in the maintenance log until the date of Igwemadu's fall. Ex. E.

34. Rosario himself called the area specifically where the two sidewalks unevenly met "a safety hazard." Tr. at 72, 80.

35. White had noticed a sloped stretch of sidewalk "a matter of weeks, maybe a month, before Ms. Igwemadu fell," but did not notify the USPS of the condition. Tr. at 42.

36. However, the condition that White noticed was not where the sidewalks met, but elsewhere. Tr. at 40.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter since it involves the United States Government and arises under the FTCA. 28 U.S.C. § 1331; 28 U.S.C. § 1346(b)(1).

2. The FTCA provides a limited waiver of the United States' sovereign immunity when its employees act within the scope of their employment in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

3. This waiver of immunity extends to premises liability theories asserted against the United States. *See, e.g., Hoefler v. United States*, 121 F. App'x. 464 (3d Cir. 2005) (holding that common law negligence principles apply to a slip and fall accident at a post office); *Dellinger v. United States*, 676 F. Supp. 567 (D. Del. 1987) (awarding damages for a slip and fall accident in a post office parking lot).

4. Because the FTCA only waives the Government's sovereign immunity in circumstances where the United States would be liable in accordance with the law of the place where the act or omission occurred, Virgin Islands law is the proper substantive law to be applied in this case. 28 U.S.C. § 1346(b)(1); *see Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017).

5. "Premises liability[3] actions in the Virgin Islands follow the same four-factor test as traditional negligence claims: '(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff.'" *Rymer v. Kmart Corp.*, 68 V.I. 571, 576 (2018) (quoting *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)).

6. The Virgin Islands Supreme Court has expressly declined to adopt the traditional tripartite classification of visitors to an establishment, foregoing inquiries into whether an injured party was an invitee, licensee, or trespasser in favor of one focused on "the possessor's superior knowledge of the property...." *Machado*, 61 V.I. at 386 (internal quotations omitted).

7. Thus, "the touchstone of premises liability in the Virgin Islands is foreseeability – if a possessor could anticipate that the conditions on its property would

---

[3] While Igwemadu pleads a sole count of negligence in her Complaint, *see* ECF No. 1, "premises liability is a theory of negligence, where the basis of the duty of care is the possession or control of the premises where the injury occurred...." *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 413 (2016).

result in injury to those foreseeably using the property, the possessor can be held liable for those injuries." *Id.* at 394.

8. "Although foreseeability is implicated to some degree in every element of negligence, each element requires a distinct and separate analysis." *Aubain v. Kazi Foods of V.I., Inc.*, 70 V.I. 943, 950 (2019).

9. The applicable duty of care in a premises liability is that a possessor "has a duty to maintain its premises in a reasonably safe condition. . . ." *Machado*, 61 V.I. at 394.

10. Translated here, the Government specifically has a duty to maintain its premises in a reasonably safe condition for those foreseeably using the post office in a foreseeable manner. An entrant to the post office using the sidewalk certainly fits within the scope of foreseeability.

11. The Court concludes that two connecting segments of sidewalk where one segment is two to three inches higher than the segment immediately adjacent is a tripping hazard, and where that hazard is not marked, does not constitute a reasonably safe condition.

12. To establish that the Government breached its duty, Igwemadu must show that the Government "had actual or constructive notice of the condition, not merely that the incident was foreseeable." *Aubain*, 70 V.I. at 950.

13. "Actual notice exists if the store had been warned about the condition of the [dangerous condition] on the floor beforehand." *Felix v. GMS*, 501 F. App'x 131, 135 (3d Cir. 2012).

14. Here, the Court finds Sheridan's testimony to be credible. Sheridan testified that he had observed numerous other post office patrons trip over the same section of walkway that Igwemadu fell on, and alerted USPS of the dangerous condition a couple of months prior. Tr. at 60.

15. Moreover, the Court finds that it strains credulity that, if post office employees conducted regular inspections as Rosario testified, that a two-to-three inch raised sidewalk would spring up from perfectly level overnight. Therefore, the Court finds that, having actual

notice, the Government breached its duty to maintain the premises of the Sugar Estate Post Office in a reasonably safe condition.

16. There is conflicting testimony regarding causation. The parties do not dispute that Igwemadu tripped, however the relevant finding is *where* she tripped. The Court finds White's testimony to be more credible here. White observed the incident from eight to ten feet away, and watched the entire incident unfold objectively with a clear view. Tr. at 33-37, 46. White delivered a substantial portion of his testimony while being shown Exhibit 2. Exhibit 2 is a photograph of two connecting sidewalks marked by a cone and blockaded with black and yellow caution tape. The photograph is extremely suggestive as to where an individual may have fallen. Despite this, White consistently testified that Igwemadu did not fall at the section clearly marked as hazardous, but fell "further down the sidewalk." *E.g.*, Tr. at 53 (Q: "So was it, was it where the cone is in that photo or further down the sidewalk?" A: "Further down the sidewalk."). White testified to this under questioning by both parties as well as the Court, despite being a witness called by Igwemadu. Notably, White did not testify to witnessing Igwemadu stumbling as she walked down the uncovered sidewalk, or testify to anything that would indicate that Igwemadu tripped over the uneven joint where the two sidewalks met.

17. Further, White has known Igwemadu since roughly 1975, working together both in the Virgin Islands Police Department and the Virgin Islands Legislature. Tr. at 27.

18. Because White knew Igwemadu, is not affiliated with the Government, and maintained a consistent account of what he witnessed contrary to the suggestive exhibit he was being shown at the time, the Court has no reason to question his credibility in testifying to where Igwemadu fell.

19. Conversely, Igwemadu testified to tripping "right where the cone is." Tr. at 107. However, the Court finds that this testimony may have been prompted by the fact that Igwemadu was being shown Exhibit 2 at the time she made this statement, which clearly pinpoints an exact location that the USPS believed was dangerous, and is therefore more consistent with a recitation of liability. *Id.*

20. The fact that White repeatedly contradicted this suggestive exhibit leads the Court to conclude that his testimony is significantly more credible.

21. Accordingly, the Court finds that Igwemadu tripped and fell a few steps onto the sidewalk, after passing the dangerously uneven sidewalk intersection.

22. In order to find the Government liable, the Court must find that the dangerous condition was "the factual and legal cause of" Igwemadu's injuries. *Rymer*, 68 V.I. at 576.

23. The only dangerous condition of which evidence was presented was that the intersection where the uncovered sidewalk met the covered sidewalk, near the side entrance to the post office where the post offices boxes are located, was uneven. *See, e.g.,* ECF No. 102, at 2; Tr. at 107; Specifically, that the uncovered sidewalk was higher than the covered concrete patio, creating a two-to-three inch lip where the two sidewalks intersected. Tr. at 58-59.

24. Based on the Court's findings of fact in this case, the Court does not find that Igwemadu tripped on the dangerously uneven intersection of the two sidewalks. Rather, the evidence in this case indicates that Igwemadu tripped after taking several steps onto the uncovered sidewalk, well clear of the uneven intersection.

25. Therefore, the Court finds that Igwemadu did not trip over a dangerous condition at the Sugar Estate Post Office and her fall was not caused by the dangerously uneven sidewalk.

26. Absent a finding that the dangerous condition was the factual and legal cause of Igwemadu's injuries, the Court must conclude that Igwemadu has failed to meet her burden of proof.

27. No further analysis into Igwemadu's damages is needed.

28. The Court will issue Judgment in favor of the Government.


**DATE:** July 15, 2022                               */s/ Robert A. Molloy*
                                                                                **Robert A. Molloy**
                                                                                 **Chief Judge**